ANTOINE E. CARTIER

*v.*

THE TROY LUMBER COMPANY.

*Filed at Ottawa October 31, 1891.*

1. EVIDENCE—*failure to produce books upon notice—secondary evidence—presumptions.* On the trial of a case, the defendant was notified to produce his books containing certain entries, and on his refusal to produce them, his book-keeper was called and testified to such entries as related to the case. The court then instructed the jury, that if they believed, from the evidence, that defendant "had in his possession or under his control, so that he might have produced them, books or papers which contain evidence material to this case, which he has not produced in evidence, you have a right to presume that such books and papers, if produced in evidence, would be injurious to his case, unless you find that such presumption has been refuted by other credible evidence in this case :" *Held,* that the court erred in giving the instruction.

2. The mere non-production of books or papers upon notice has no other legal effect than to admit the other party to prove their contents by parol, unless under special circumstances. If such secondary evidence is imperfect, vague and uncertain as to dates, sums, etc., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence. It will not be presumed that such books or papers, if produced, would establish the fact which his adversary alleges they will prove.

3. An instruction authorizing the jury to presume, from the omission of a party, however innocent, to produce his books and papers, that such books and papers containing evidence material to the case would,

if produced, be injurious to his case, is erroneous, and does not state the law of evidence applicable to the case. Such an instruction is open to the objection that it leaves the jury free to determine for themselves what would be material evidence.

4. SAME—*books admissible only by consent—failure to produce—presumptions.* Where a party's books, and the entries therein, can not be admitted in evidence on his own behalf as primary proof without the consent of the adverse party, no presumption can arise against him from his failure to produce them. Whatever inferences may be drawn against a party by reason of his failure to produce evidence in his control, are allowable only on the theory that he willfully withholds such evidence.

5. INSTRUCTION—*indicating views of court on facts.* An instruction which clearly indicates to the jury the views of the court as to the presumption arising from the facts therein stated, is improper.

6. SAME—*of the accuracy required.* Where the evidence is conflicting and irreconcilable, so that a verdict may well be rendered either way, accuracy in the instructions becomes necessary, and an error in an instruction in such case will call for a reversal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

Appellee, being the owner of a number of tracts of pine timber lands in Michigan, together with certain buildings, a saw-mill, etc., pertaining to the business of lumber manufacturing, on the 8th of September, 1883, entered into a contract with appellant for the sale of the same. The contract price was $190,000, provided the timber on said lands should amount to 50,000,000 feet or more, the quantity to be determined by an agreed estimate, each party selecting an estimator, and they a third, if the two could not agree. If the estimate fell below 50,000,000 feet, for each 1000 feet less than that amount a reduction was to be made from the $190,000 of $2.25 per thousand. In pursuance of this agreement, appellee selected Michael Neilan, and appellant John Stronach, as estimators. The former reported as the result of his estimate, 27,050,000 feet, and the latter, 25,770,000 feet, but they finally agreed

upon 26,665,441 feet as the aggregate amount of timber on said lands. After further negotiations it was agreed between the parties, that in addition to the $2.25 per thousand below 50,000,000 feet, a deduction of $5000 should be allowed from the contract price as originally agreed upon, and with this modification the agreement was carried into effect.

This action was begun on the 1st day of June, 1888, in the circuit court of Cook county. The declaration is in case, and after setting up the foregoing agreement and facts, avers that the defendant, for the purpose of defrauding the plaintiff, bribed said estimators, thereby inducing them to bring in a false estimate of the amount of said timber, and that said estimators, being so bribed, did knowingly bring in a false report of the amount of timber on said lands, making it appear that they actually contained but 26,664,441 feet, whereas they in fact contained more than 50,000,000 feet; that having procured said false report, the defendant stated and insisted to plaintiff that because of said estimate having fallen so far below 50,000,000 feet, a further deduction of $5000 must be made from the purchase price, without which he would not take the property; that plaintiff, not knowing the fraud practiced by defendant, and believing the estimate had been fairly made, agreed to such further deduction, and also the sum of $2.25 for each 1,000 feet of the apparent shortage by said false estimate, making in all a deduction of $57,501.75. The general issue being pleaded, a verdict and judgment for the plaintiff for $42.137.27 resulted by a trial in the circuit court.

Mr. D. V. SAMUELS, and Messrs. RAMSDELL & BENEDICT, for the appellant:

No affidavit was filed showing that the book contained any evidence material to the issue, nor was reasonable notice given. There was, then, no foundation for the introduction of secondary evidence. *Field* v. *Zemansky,* 9 Bradw. 479; *Bank* v. *Mansfield,* 48 Ill. 494.

The instruction relating to the effect of the failure to produce books and papers clearly invaded the province of the jury. It is for the jury to say what inference is to be drawn from the failure of a party to produce evidence which is accessible to him. 1 Thompson on Trials, sec. 1044; *Sturtevant* v. *Wallock,* 141 Mass. 119; *Ashlock* v. *Linder,* 50 Ill. 169; *Railroad Co.* v. *Moranda,* 108 id. 576; *Gravel Road Co.* v. *Pierce,* 96 id. 584; *Frame* v. *Badger,* 79 id. 441; *Wickersham* v. *Beers,* 20 Bradw. 243; *Railroad Co.* v. *People,* 96 id. 584; *Graves* v. *Colwell,* 90 id. 620.

The practice of instructing the jury as to what they may or may not infer from circumstances in evidence, is one not warranted by the statute. Practice act, sec. 51; *Graves* v. *Colwell,* 90 Ill. 620; *Railroad Co.* v. *People,* 96 id. 584; *Law* v. *Woodruff,* 48 id. 399.

The instruction singles out and makes prominent a particular fact, which, if true, is not conclusive. *Haines* v. *Inter-Ocean,* 20 Bradw. 207; *Homes* v. *Hale,* 71 id. 552.

Messrs. TENNEY, HAWLEY & COFFEEN, for the appellee:

As to the presumption arising from the non-production of evidence, see 3 Blackstone's Com. 368; Wharton on Evidence, sec. 1267; 2 Best on Evidence, sec. 411; 1 Greenleaf on Evidence, sec. 37; 1 Thompson on Trials, sec. 794; *Winchell* v. *Edwards,* 57 Ill. 41; *Downing* v. *Plate,* 90 id. 268; *Railway Co.* v. *McMahon,* 103 id. 485.

This court has often decided that although an instruction may be objectionable, a judgment will not be reversed for that cause when, upon the whole record, it appears that the right is with the party in whose favor the instruction was given, and that justice has been done. *Newkirk* v. *Cone,* 18 Ill. 449; *Dishon* v. *Schorr,* 19 id. 59; *Elam* v. *Badger,* 23 id. 498; *Insurance Co.* v. *Wetmore,* 32 id. 221; *Dacey* v. *People,* 116 id. 555.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

Among the instructions given to the jury by the trial court was the following:

"If you believe, from the evidence, that the defendant, Cartier, has in his possession or under his control, so that he might have produced them, books or papers which contain evidence material to this case, which he has not produced in evidence, you have a right to presume that such books and papers, if produced in evidence, would be injurious to his case, unless you find that such presumption has been refuted by the other credible evidence in the case."

It is now insisted by appellant that the giving of this instruction was manifest error calculated to mislead the jury' and prejudice his case. It was condemned by the Appellate Court, a majority of its members, however, holding, that the giving of it was not, under the facts of the case, reversible error. We fully concur in the view that the instruction does not correctly state the law of evidence as applicable to the facts in proof. It clearly authorized the jury to indulge a presumption not legally arising from the facts on which it is based. It will be observed that according to its terms, however innocent may have been the omission on the part of defendant to produce each and every book and paper in his possession or under his control, containing evidence material to the case on either side, the damaging presumption might be indulged. It left the jury free to determine for itself what would be material evidence in the case. That which it might presume was not merely facts which the absent evidence would tend to prove, but that all such books and papers, if produced, would be injurious to the defendant's case, generally.

It is said, however, the instruction must be construed in the light of the evidence on which it is based. That is doubtless true, if it can be definitely determined what that evidence is. On the trial the plaintiff called upon defendant to pro-

duce one of his books, which it was claimed showed certain estimates of the timber on the lands sold, and particularly the entry, "To bills payable N., $2000." One Bearman, a witness for plaintiff, and former book-keeper for defendant, testified that he made the entries, and he swore to the estimates as shown by the book; also, that the entry to bills payable, etc., meant $2000 paid to the estimator Neilan by the defendant. The defendant admitted that the entry appeared on the book, and said that he could give no explanation of it. Construing the instruction under consideration as being based on the failure to produce this book, (and it must have been so based at least in part,) the jury were told, that notwithstanding the secondary proof of the entries sought to be introduced by plaintiff, still they might presume the book, if it had been produced, would have been injurious to defendant's case. Such is clearly not the law. Greenleaf says, in his work on Evidence, (vol. 1, sec. 37): "Neither has the mere non-production of books, upon notice, any other legal effect than to admit the other party to prove their contents by parol, unless under special circumstances." SUTHERLAND, J., said in *Life and Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.* 7 Wend. 31: "I do not understand the rule to be, that a party has a right to infer, from the refusal of his adversary to produce books or papers which may have been called for, that if produced they would establish the fact which he alleges they would prove. The rule is this: the party in such a case may give secondary or parol proof of the contents of such books or papers, if they are shown or admitted to be in the possession of the opposite party; and if such secondary evidence is imperfect, vague and uncertain as to dates, sums, boundaries, etc., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence." The rule thus stated is quoted with approval by this court in *Rector* v. *Rector*, 3 Gilm. 120. Here appellee got the full benefit of all that it claimed the book would prove, nothing being left vague or

uncertain, and still had the benefit of an instruction from the court that the jury might presume further injury to the defendant's case because the book itself was not produced.

It is said, however, that other books, maps, contracts, etc., were withheld. Some of these were pointed out in the argument, but it is not shown that they were called for by the plaintiff, nor that they would have been competent evidence on behalf of defendant if they had been offered. We are unable to see how they could have been introduced on his behalf as primary proof without the consent of plaintiff. No presumption against him could therefore arise from his failure to produce them. Whatever inferences may be drawn against the party by reason of his failure to produce evidence in his possession or under his control are allowed on the theory that he willfully withholds such evidence. His conduct, says Greenleaf, is attributed to his supposed knowledge that the truth would have operated against him. (Sec. 37, *supra.*) He is treated in law as a "spoliator of evidence." (Lawson on Presumptive Evidence, 120, *et seq.*) He must therefore suffer, under the maxim "*omnia presumuntur contra spoliatorem.*"

It will not be seriously contended that a party is to be treated as a "spoliator of evidence," merely because he does not produce books and papers which he could only offer in evidence by consent of his adversary, or because some fact might be developed on the trial which would render them competent. It was said in *Merwin* v. *Ward*, 15 Conn. 377: "Where a party has in his possession a deed or other instrument necessary to support his title, and he refuses to produce it, and attempts to make out his title by other evidence, such refusal raises a strong presumption that the legitimate evidence would operate against him. But this rule does not apply to such documents as a party has no right to give in evidence without the consent of his adversary."

The instruction is also subject to the criticism that it clearly indicates to the jury the views of the court as to the presump-

tion arising from the facts stated, and in that regard violates the rule announced in *Elston and Wheeling Gravel Road Co.* v. *The People ex rel.* 96 Ill. 584. See, also, *Graves* v. *Colwell*, 90 id. 620.

We can not agree with the Appellate Court in its conclusion, that notwithstanding the error of this instruction the judgment of the circuit court should be affirmed. Justice Gary, speaking for a majority of that court, says: "It is undoubtedly true, as appellant's counsel allege, that much of the testimony on the part of appellee came from very suspicious sources; but the credibility of witnesses is for the jury." Justice Moran, dissenting, says: "The evidence is conflicting, and upon the points essential to appellees' case it does not seem to me to at all preponderate in their favor." These remarks, coming from the court, whose special province it was to review the evidence and determine the facts in the case, are significant. The case is certainly one falling within the rule, that where the evidence is conflicting and irreconcilable the instructions to the jury must be accurate. Here, on the evidence actually before the jury a verdict might well have been rendered either way. The jury are told, however, that from the mere absence of evidence they may presume against the defendant, to the injury of his case. To what extent that injury may have been carried in the minds of the jury no one can tell. It furnished a broad ground on which to condemn the entire defense. No one can say with confidence that it may not have seriously prejudiced the defendant's rights. The giving of it was manifest and prejudicial error, for which the judgment of the circuit and Appellate Courts are reversed, and the cause remanded to the circuit court for another trial.

In this view of the record it will be unnecessary to notice other errors assigned. They do not go to the merits of the action, and will not probably again arise.

*Judgment reversed.*