## ROSSITER v. BOLEY.

In an action for services, the court instructed that if a party has in his possession evidence touching a matter in controversy, and such evidence is not produced, the jury may assume that such evidence would be damaging to the party failing to produce it, which instruction was based on the theory that plaintiff did not produce certain receipts and books of account. No notice to produce was given. *Held,* that such instruction

was erroneous, and authorized the jury to infer that every withholding of evidence would be prejudicial, no matter how innocently done, or of what character the evidence was, or what it would tend to prove.

FULLER, P. J., dissenting.

(Opinion filed July 11, 1900.)

Appeal from circuit court, Lawrence county. Hon. JOSEPH B. MOORE, Judge.

Action by Bryan E. Rossiter against Daniel C. Boley for services. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The facts are stated in the opinion.

*Martin & Mason,* for appellant.

It is only as against a spoliator of evidence that all things are presumed. 1 Greenleaf Ev. § 37; Cartier v. Lumber, 28 N. E. 932; Armory v. Delamirie, 1 Smith Lead Cases, 581; Fox v. Hale & Norcross, 41 Pac. 322.

When it is the duty of a party to produce evidence and he refuses, the presumption against him arises. 1 Rice on Ev. § 104; Ins. Co. v. Ins. Co., 7 Wend. 33; Hanson v. Eustace, 2 How. 708; Cartier v. Troy, 28 N. E. 932; Chaffee v. United States, 18 Wall 545.

Where evidence would be competent for either party, and is equally accessible to both parties, it is error to charge that the jury can draw an unfavorable inference against one of the parties for failing to introduce it. Bates v. Morris, 13 So. 138; Scoviel v. Baldwin, 27 Com. 318; Arbuckle v. Templeton, 25 Atl. 1095; Bleecker v. Johnston, 69 N. Y. 309; Stickney v. Ward, 47 N. Y. S. 597; Meazley v. Hoyt, 125 N. Y. 771; 26 N. E. 719.

*McLaughlin & McLaughlin,* for respondent.

The mere withholding or failing to produce evidence, which under the circumstances would be expected to be produced and which is available, gives rise to a presumption against the party. Ins. Co. v. Ermann, 36 La. An. 841; Danner v. Railroad, 4 Rich 328; Croft v. Bill, 35 N. H. 83; The Lawrence 15 Fed. 635; Cole v. Railroad, 95 Mich. 77; State v. Rodman, 62 Ia. 456; Rice v. Com. 102 Pa. St. 408; Ins. Co. v. Smith, 117 Nev. 261; Railroad v. Ellis, 54 Fed. 481.

CORSON, J. This is an action by the plaintiff to recover for services as superintendent of a cyanide plant in Deadwood from September, 1897, to March, 1898, alleged to be of the value of $300 per month, or $1,730, for which amount the jury found a verdict in favor of plaintiff; and from the judgment thereon, and an order denying a new trial, the defendant has appealed.

Defendant in his answer denied the value of the services as claimed, but admitted that from January 8th to March 8th respondent was employed by appellant as superintendent under an express agreement and guaranty that he would extract at least 90 per cent. of the gold contained in the ores; that he performed his work as superintendent so carelessly, negligently, and incompetently that he saved much less than 90 per. cent., losing at least $2 per ton upon 1,583 tons of ore reduced. And appellant claimed damages for such loss, by way of counter-claim.

The first and principal error relied upon by appellant for a reversal of the judgment is error of the court in giving to the jury the following instruction at the request of respondent: "The court instructs the jury that if a party has in his posses-

sion evidence touching the matter in controversy, and such evidence is not produced before the jury, the jury have a right to asume that such evidence would be damaging to the party who fails to produce material evidence."

This instruction seems to be based upon respondent's theory that appellant had failed to produce the mint returns of bullion produced by the reduction works while the respondent had charge of the same, and that the appellant had failed to introduce his books of account, which respondent claims would have shown whether or not respondent had been credited with any amount on account of his services. No notice seems to have been given the appellant at the time of the trial or before to produce the bullion receipts or the account books in evidence. It will be observed from the instruction given that it is in very general terms. It is not limited to competent or relevant evidence, nor is it made a condition that it should have been intentionally or willfullly withheld; but it asserts generally that if a party has in his possession evidence touching the matter in controversy, and such evidence is not produced before the jury, the jury have a right to assume that such evidence would be damaging to the party. Such an instruction was clearly calculated to prejudice the case of the appellant before the jury. It was an intimation, if not an opinion, on the part of the court that the appellant had withheld evidence that he should have given to the jury. In a case where the evidence is conflicting, such an instruction would necessarily have great influence with the jury in determining their verdict. There was no evidence in this case showing or tending to show that the mint receipts giving the amount of bullion received by the mint would have conclusively determined the issue as to

whether or not respondent had succeeded in obtaining 90 per cent. of the gold from the ores reduced under his management. One method of determining that fact is to ascertain the assay value of the ore before, and of the tailings after, it is reduced, and this seems to have been the method adopted by the appellant in this case. Again, appellant claimed there were 150 tons of ore unaccounted for by the respondent. The court therefore had no right to assume that the failure to introduce evidence of the mint assays of the bullion would have in any manner determined, or aided the jury in determining, the question of whether or not the respondent worked the ore up to 90 per cent of the assay value. No notice to produce the mint receipts or books of account having been given, neither the receipts nor the account books nor their contents were before the court, except such as were introduced in evidence. Greenleaf, in his work on Evidence, in speaking of cases where notice has been given to produce certain papers, says: "Neither has the mere nonproduction of books upon notice any other legal effect than to admit the other party to prove their contents by parol, unless under special circumstances." 1 Greenl. Ev. § 37. In Life & Fire Ins. Co. v. Mechanics' Fire Ins. Co., 7 Wend. 31, the supreme court of New York says: ."I do not understand the rule to be that a party has the right to infer, from the refusal of his adversary to produce books or papers which may have been called for, that, if produced, they would establish the fact which he alleges they would prove. The rule is this: The party in such a case may give secondary or parol proof of the contents of such books or papers if they are shown or admitted to be in the possession of the opposite party; and, if such secondary evidence is imperfect, vague, and uncertain

as to dates, sums, boundaries, etc., every intendment and pre-
sumption shall be against the party who might remove all
doubt by producing the higher evidence." The rule here laid
down was quoted with approval by the supreme court of Illinois
in Rector v. Rector, 3 Gilman,120,and also by the same court in
the recent case of Cartier v. Lumber Co., 138 Ill. 533, 28 N. E.
932, 14 L. R. A. 470. See, also, Pollak v. Harmon, 94 Ala.
420, 10 South. 156. In Cartier v. Lumber Co., *supra*, the fol-
lowing instruction was held erroneous, not only by the court
of appeals. but by the supreme court, of Illinois: "If you be-
lieve from the evidence that the defendant, Cartier, has in
his possession or under his control, so that he might have
produced them, books or papers which contain evidence mater-
ial to this case, which he has not produced in evidence, you
have a right to presume that such books and papers, if pro-
duced in evidence, would be injurious to his case, unless you
find that such presumption has been refuted by other cred-
ible evidence in the case." This instruction, it will be observ-
ed, is very similar to the one now before us. In speaking of the
instruction the supreme court says: "It clearly authorized the
jury to indulge a presumption not legally arising from the
facts on which it is based. It will be observed that, according
to its terms, however innocent may have been the omission on
the part of defendant to produce, each and every book and
paper in his possession or under his control containing evi-
dence material to the case on either side, the damaging pre-
sumption might be indulged. It left the jury free to determine
for itself what would be material evidence in the case. That
which it might presume was not merely facts which the ab-
sent evidence would tend to prove, but that all such books and

papers, if produced, would be injurious to the defendant's case
generally   *   *   *   Construing the instruction under consid-
eration as being based on the failure to produce this book,—
and it must have been so based, at least in part,—the jury were
told that, notwithstanding the secondary proof of the entries
sought to be introduced by plaintiff, still they might presume
the book, if it had been produced, would have been injurious
to defendant's case.   Such is clearly not the law."   And the
learned court concludes as follows: "The case was certainly
one falling within the rule that where the evidence is conflict-
ing and irreconcilable the instructions to the jury must be
accurate.   Here, on the evidence actually before the jury, a
verdict might well have been rendered either way.   The jury
is told, however, that from the mere absence of evidence they
may presume against the defendant, to the injury of his case.
To what extent that injury may have been carried in the minds
of the jury, no one can tell.   It furnished a broad ground on
which to condemn the entire defense.   No one can say with
confidence that it may not have seriously prejudiced the de-
fendant's rights.   The giving of it was manifest and prejudi-
cial error, for which the judgments of the circuit and appellate
courts are reversed, and the cause remanded to the circuit
court for another trial."   We are of the opinion that the su-
preme court of New York, in Life & Fire Ins. Co. v. Mechan-
ics' Fire Ins. Co., *supra*, laid down the true doctrine applicable
to this class of cases, and that to hold that a mere failure to
produce evidence on the part of a party may subject him to an
instruction such as was given in this case would be introducing
a very dangerous rule into the law of evidence.   All courts
have observed how anxious jurors are to secure from the

trial judge some intimation of his opinion as to how the case should be decided, and in the case at bar the judge could scarcely have given to the jury that intimation more clearly than he did in the instruction given. The learned counsel for the respondent have called our attention to a number of cases, among which are the following from our own reports: Smith v. Tosini, 1 S. D. 632, 48 N. W. 299; Probert v. McDonald, 2 S. D. 495, 51 N. W. 212; Enos v. Insurance Co., 4 S. D. 639, 57 N. W. 919,—which they insist support the instruction given by the court. But, in our view, these cases fall far short of sustaining the contention of counsel. We shall not attempt a review of these decisions, as such a review would extend this opinion to an unreasonable length and serve no useful purpose.

A number of other questions were discussed by counsel in their briefs, but, as these questions will not necessarily arise upon another trial, we shall not consider them in this opinion. We are of the opinion that the court was clearly in error in the instruction complained of, and the judgment and order denying a new trial are reversed.

FULLER, P. J., dissenting.