## GEORGE HARPER V. THE IOLA PORTLAND CEMENT COMPANY.

No. 15,179. (93 Pac. 179.)·

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Duty to Furnish Safe Place to Work—Assumption of Risk—Fellow Servants.*· The decision in ·the case of *Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856, to the effect that a master's duty requires him to make and carry out regulations to render the work of his employees reasonably safe, that an employee does not impliedly assume the risk of injury from dangers against which the master has expressly undertaken to protect him, and that the fellow-servant rule has no application when ·the negligent employee is charged .with a duty which the master is bound to fulfil, applied to a personal-injury case growing out of the operation of a ,stone-quarry.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed November 9, 1907. Reversed. Opinion denying a petition for a rehearing filed January 11, 1908.

*Bennett & Bennett,* and *Lucas & Lucas,* for plaintiff in error.

*Baxter D. McClain,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The defendant operates a stone-quarry in connection with its cement manufactory. The quarry presents a face of solid rock some twenty feet in height. Rows of holes are drilled some distance back from the edge and loaded with dynamite, which is exploded with a battery. These "battery shots" disengage irregular fragments of rock, numbers of which are too large to be loaded at once into cars and transported to the crusher and which must therefore be reduced. Many cannot be broken by use of the sledge, and these are blown to pieces by dynamite, the holes drilled for the purpose being called "pop holes" and the explosions being called "pop shots."

Harper v. Cement Co.

Frequently a battery shot does not discharge all the battery holes, and fragments of rock thrown into the pit of the quarry will contain highly dangerous charges of unexploded dynamite.

The plaintiff was an employee of the defendant, and his duty consisted in drilling pop holes. While he was so occupied he exploded the charge of an unshot battery hole and was injured. He sued the defendant for damages, claiming a violation of the duty to furnish him a reasonably safe place to work. The defendant denied that it was negligent, and pleaded contributory negligence and assumption of risk. A demurrer to the plaintiff's evidence having been sustained, he prosecutes error.

There was sufficient evidence to go to the jury that at the time of the accident the plaintiff's work was confined to the drilling of pop holes in fragments of rock which had been dislodged by battery shots, and had nothing to do with the drilling, loading or shooting of battery holes; that under regulations adopted by the defendant governing work in the quarry it was the duty of the employee who loaded and shot battery holes to report the number loaded to the quarry foreman; that the foreman or the shooter, or both, counted the explosions as they occurred to ascertain if all loaded holes were shot; that if the charge in any hole failed to explode it was the duty of the shooter to find it and explode it, and if he could not explode it at once to mark it, tell the workmen of its location, and do so at the next shooting; and that the plaintiff had been advised of this rule and was working in reliance upon it when he was injured.

Further evidence was adduced to show that the plaintiff had no knowledge of the existence of the unexploded charge which injured him and had no way of determining whether the rock upon which he undertook to work was loaded. It looked like any of the others there. Its surface was covered with a coating of ice, into which pieces of stone were frozen, and the

quarry was not lighted sufficiently to make visible indications of a hole having been drilled in the rock if any had existed.

Under this evidence the case is in all respects identical in principle with that of *Brick Co. v. Shanks*, 69 Kan. 306, 76 Pac. 856.

The commonest kind of humanity required that pop drillers should not be sent unwarned to drill into rocks containing concealed charges of dynamite, and the law clearly required the defendant to adopt some kind of a regulation for their protection. If unexploded charges were readily discoverable by drillers of ordinary capacity perhaps they might be hired with the understanding they should locate such perils themselves, but even then the employment would be harsh, if legitimate, and not the kind in which plaintiff was engaged. The defendant expressly undertook to make the place where plaintiff was required to work safe by the adoption of the regulation described, and an implied agreement to assume the risk guarded by the regulation cannot be recognized.

"There is no room for any implied agreement of the employee to assume the risk of danger in the presence of an express regulation upon the subject established by the pit-boss for the very purpose of protecting him." (*Brick Co. v. Shanks*, 69 Kan. 306, 309, 76 Pac. 856.)

For the reasons stated at length in the case just cited the plaintiff was not a fellow servant of the employee who was charged with the duty of discovering unexploded charges of dynamite, marking them, and warning other workmen of their location. No matter to whom the task might be assigned, or what the rank or grade of his service, the duty was one the master was bound to fulfil, and failure to do so constituted actionable negligence.

Although the plaintiff was, as he admitted, familiar with the quarry and with the details of the various kinds of work performed there, his conduct, under

Harper v. Cement Co.

the circumstances stated, was not such as to charge him with contributory negligence.   In other respects a cause of action was established, and the case should have been submitted to the jury.

The judgment of the district court is reversed and the cause remanded.

---

OPINION DENYING A PETITION FOR A REHEARING.
(93 Pac. 343.)

The opinion of the court was delivered by

BURCH, J.: In a petition for a rehearing it is pointed out that the record is open to the interpretation that it was an unexploded charge of a "pop hole" which injured the plaintiff.   Apparently this is true, but the fact does not affect the decision of the cause or the validity of the opinion rendered.   The plaintiff testified as follows:

"Ques.  I will ask you to state what the rule of the company was at the time you was injured or previous to that time and within a short time previous to that time with reference to finding out whether or not the pop shots that were loaded had exploded.   If there was any rule state that rule.   Ans.  Yes, sir; there was a rule of that, that they should find how many they had loaded to see that they all had went.

"Q.  Who should do that?   A.  Why, the foreman; that was his place—to see they all went.

"Q.  Did the shooter have anything to do about the matter—who counted them when they went, or who repeated the number?   A.  The man counted them, and then the foreman counted them, too.

"Q.  What man?   A.  The one that done the shooting; and then he would come back there and look.

"Q.  Did the same man do the loading and the shooting?   A.  Yes, sir.

"Q.  Then the rule, as I understand you, was this: that the man who loaded the holes also shot the holes?   A.  Yes, sir.

"Q.  It was his duty to count the number he loaded?   A.  Yes, sir.

"Q.  Who counted the number that were shot?   A. Why, then the foreman counted them, too.

"Q. He and the foreman both counted the number of shots? A. Yes, sir.

"Q. Then suppose a load had n't gone? A. Well, then he would go back and hunt it and shoot it.

"Q. Who? A. The one that does the shooting. He put something there if they did n't wait to shoot it, so they would know there was a loaded hole there.

"Q. It was the duty of the shooter to mark it if he could not shoot it? A. If it was too late he would tell him he could not shoot it, and he would mark it and tell them there was a loaded hole such a place—them that was working there by it.

"Q. From whom would the shooter get his instructions with reference to his duty? A. From the foreman of the quarry.

"Q. At the time you was injured I will ask you to state whether or not you had any knowledge or any notice that the rock you were drilling upon was loaded. A. No, sir.

"Q. Did you know any way of finding out or of telling that rock was loaded? A. No, sir; I had no way of finding out. It looked like any of the rest of them."

"Q. The rock you drilled—I will ask you to state whether or not in drilling the rock where you was hurt you noticed or could tell from the way it drilled that it had been drilled before. A. No, sir; could not tell any difference.

"Q. Was there anything about the location of the rock or the consistency of it or the surroundings that suggested to you, or from which you could tell, that the rock had been drilled? A. No, sir.

"Q. Was there anything from which you was able to tell that the rock had been loaded? A. No, sir."

The assumption in the petition for rehearing that this position was abandoned upon cross-examination is unsupported by the record. The plaintiff was not cross-examined upon the defendant's duty to mark unshot holes and warn workmen of them, and in respect to the counting of shots he testified on cross-examination as follows:

"Ques. Whose duty was it to count the shots? Ans.

It was the foreman's duty to count them. He counted them while I was shooting.

"Q. That is what you are testifying about? A. Yes, sir.

"Q. Mr. Bliss was your foreman then? A. Yes, sir; I counted them and I worked under Lang. He quit after that and Lang was foreman.

"Q. Did you count them for Lang? A. He asked me how many holes I had drilled, I had loaded, and I told him I had so many holes to shoot.

"Q. When he was n't there would you shoot them off? A. He was always there. You had to shoot before nine o'clock, and he would come around and tell me in time and ask me how many holes I had.

"Q. He always did that? A. Yes, sir."

A witness, Hardie Jones, testified that it was the duty of the man who did the shooting to count the shots, locate the holes that missed and afterward shoot them, and that the shooter worked under the direction of the quarry foreman. This evidence supports the contention of the plaintiff in respect to the duty resting upon the defendant.

It does not lie with the defendant cavalierly to waive the plaintiff's evidence out of the case by saying he "undertook to concoct some rule or regulation established by, and to be personally carried out" by, the quarry foreman. In this state it is the province of the jury to weigh evidence and to pass upon the credibility of witnesses.

In the petition for a rehearing the following question is asked: "Suppose plaintiff's own statement was true—that defendant promised to repair the lights—but without such repair the plaintiff, with full knowledge, goes to work: does he not assume the risk of working with the lights as they are?" A full answer may be found in the case of *Railway Co. v. Loosley, ante*, p. 103.

All other matters presented by the petition for a rehearing are fully covered by the original opinion,

which proceeds upon principles of law long settled in this state and in full accord with justice and right between employers of labor and laborers, who must be furnished a reasonably safe place in which to work.

The petition for a rehearing is denied.