THE FOWLER PACKING COMPANY V. JOSEPH ENZENPERGER, JR., *a Minor, etc.*

No. 15,240.   (94 Pac. 995.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*"Factory Act"—Protection of Employees.* The principal purpose of that provision of the factory act which requires owners or operators of manufacturing establishments properly and substantially to enclose or secure elevators, hoisting-shafts and well-holes is to protect the lives and limbs of employees at work in such establishments.

2. ———— *Failure Properly to Enclose Elevator — Prima Facie Evidence of Negligence.* Two freight-elevators, without enclosures or coverings, were operated in a single enclosed shaft, in a six-story packing-house, and while barrels were being loaded on one of the elevators through a door of the shaft at the sixth floor a barrel was allowed to fall down the shaft upon an employee then at work upon the other elevator at the fourth floor, thereby injuring him. *Held,* in an action to recover damages for the injury, that the failure of the owner of the packing-house to enclose and make secure the elevator on which plaintiff was at work was *prima facie* evidence of negligence within the meaning of the factory act, and that the defendant is liable to the plaintiff for the injury suffered by him in consequence of such neglect.

3. ———— *Instructions — Master's Duty to Guard Machinery.* The statement of the court in an instruction that the defendant was required to enclose *and* secure the elevators did not impose a higher duty upon the defendant in this case than is prescribed by the statute which provides that elevators shall "be properly and substantially enclosed *or* secured, in order to protect the lives and limbs" of employees. (Laws 1903, ch. 356, § 1.)

4. PETITION—*Injury to Employee—Specific Reference to "Factory Act" Unnecessary.* In order to avail himself of the pro-

Fowler v. Enzenperger.

tection of the factory act it was not necessary that plaintiff should plead or make specific reference to that act in his petition. It is sufficient to plead such acts of negligence as bring the case within the rule of the statute.

5. EVIDENCE—*Testimony Withheld—Presumption.* As a general rule the omission by a party to produce important testimony relating to a fact of which he has knowledge and which is peculiarly within his own reach and control raises the presumption, open to explanation, of course, that the testimony, if produced, would be unfavorable to him.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed March 7, 1908. Affirmed.

*O. H. Dean, W. D. McLeod, H. C. Timmonds, O. C. Mosman, J. E. McFadden,* and *R. E. Morris,* for plaintiff in error.

*E. L. Fischer, L. W. Keplinger,* and *C. W. Trickett,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Joseph Enzenperger, jr., to recover damages for injuries sustained by him while in the employ of the Fowler Packing Company. He was employed to haul meat in trucks from floor to floor of the defendant's six-story packinghouse. The trucks were carried from the different floors on two freight-elevators, operated in a single shaft. These elevators, which were merely moving platforms, without protection from above or on the sides and without a center partition between them, were operated from the fifth floor, and were used for freight only, the employees being required to walk up and down the stairways. The elevator-shaft was enclosed, but the elevators operating in it were not. Double doors opened into the shaft, each of which was provided with weights which would close the doors unless they were held or propped open. A boy was stationed at the door to open it for workmen and see that it was closed.

On March 31, 1906, the elevators were in operation, the south elevator being loaded with barrels at the sixth floor while the north one was two floors below. The double doors on the sixth floor, one opposite the south elevator and the other opposite the north elevator, were both open, and a barrel weighing seventy pounds in some way rolled through the north door, striking against the side of the south elevator, and passed down the north side of the shaft, striking and injuring Enzenperger, who was in the act of placing a truck on the north elevator, then at the fourth floor. For the injuries thus sustained the plaintiff brought this action, alleging negligence in the company in failing properly to enclose and make secure the elevator as well as the elevator-shaft and in failing to furnish him with a reasonably safe place in which to work. The answer of the company, aside from a general denial, was an averment that the plaintiff's own negligence contributed to the injury, and that if the injury was the result of negligence it was that of the plaintiff's coemployees.

On the demurrer to the evidence the question is raised as to whether the case was tried upon the proper theory. It was presented to the jury upon the theory that the provision of the factory act applies which provides:

"Every person owning or operating any manufacturing establishment which may contain any elevator, hoisting-shaft or well-hole shall cause the same to be properly and substantially enclosed or secured, in order to protect the lives or limbs of those employed in such establishment." (Laws 1903, ch. 356, § 1.)

It is insisted that no reference was made in the petition to the statute, either by its title or the number of the section, and also that it contained no allegations which justified the plaintiff in claiming under the statute. There is little reason for this complaint. While the averments of the petition did not make specific reference to the statute, they clearly brought the case

Fowler v. Enzenperger.

within the application of the provision quoted, which, as will be observed, does little more than enlarge the duties of the operator in caring for the lives and limbs of the employees and incidentally prescribes a rule of evidence to be applied in such cases. The petition set forth that defendant owns and operates a packing plant, and that it is a manufacturing establishment. The elevators were described, and it was alleged that there was no partition between them, no hoods over them, and no such guards or means provided as would protect employees from being injured by barrels or other articles falling from one elevator down into the space in which the other elevator was operated, and that the elevators were not enclosed and provided with tops, although it was necessary and practical to have it done. The petition disclosed that the defendant belongs in the class of operators on whom the statutory duties are imposed; that it failed in the performance of the duties; and that through its neglect the plaintiff suffered an injury. It thus appears that the petition contained all that plaintiff was required to prove in order to avail himself of the protection of the act and to make out a *prima facie* presumption of negligence. It is enough when he states in his petition the facts that he is bound to prove in order to make out his case, and since he is not required to prove the factory act, which is a public statute, it is unnecessary to make specific reference to it in his pleading. (*Lore v. American Mfg. Co.,* 160 Mo. 608, 61 S. W. 678.)

It is contended that the testimony did not show culpable negligence on the part of the company. In this connection it is argued that the shaft in which both elevators were operated was enclosed so as to meet the requirements of the statute; that doors for entry into the elevators, which completed the enclosure, were provided, and men stationed at these doors to open and close them, and if there was neglect in leaving the north door open it was the neglect of the doorkeeper, a fellow servant of the plaintiff. If the enclosure of

the shaft alone had been the measure of the company's duty in protecting the lives and limbs of its employees working on or about the elevators, it was not performed. The north door, which formed a part of the enclosure of the shaft, was not closed. The loading of the south elevator did not require the opening of the north door, through which the barrel fell. That door was not only left open but it had been propped open. How long it had been open was not shown. Shortly before the accident an employee looked up and noticed that the door was standing open. The plaintiff attempted to show the length of time, but was unable to prove when and by whom it was opened, and the defendant, within whose reach the testimony was and who must have known the fact and could have produced the testimony, failed to do so. The defendant did not offer to show that it did not know the fact, nor that it had any excuse for not knowing, and it is generally held that an omission of a defendant to produce important testimony relating to a fact of which, if it exists, he has knowledge, and which is peculiarly within his reach and control, raises the presumption—open to explanation, of course—that the testimony, if produced, would be unfavorable to him. (*The State v. Grebe,* 17 Kan. 458; *Belknap v. Sleeth, ante,* p. 164; 1 Wig. Ev. § 285; 6 Thomp. Com. Law of Neg. § 7656.)

There was sufficient testimony to show neglect of the company in leaving this unprotected opening into the shaft where the north elevator was in operation and wherein the plaintiff was working. On general principles it was the duty of the company to provide a safe place for the plaintiff to work, and this is a continuing duty that cannot be delegated — a responsibility which it could not place on the shoulders of any one else and escape liability for a resulting injury. (*H. & St. J. Rld. Co. v. Fox,* 31 Kan. 586, 3 Pac. 320; *Mining Co. v. Robinson,* 67 Kan. 510, 73 Pac. 102; *Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856; *Crist v. Light Co.,* 72 Kan. 135, 83 Pac. 199; *Schwarzschild v. Weeks,* 72

Kan. 190, 83 Pac. 406, 4 L. R. A., n. s., 515; *Harper v. Cement Co.*, 76 Kan. 612, 93 Pac. 179; *Wendler v. People's House Furnishing Co.*, 165 Mo. 527, 65 S. W. 737.) We prefer, however, to rest this decision on the failure of the company to observe the statutory requirement to enclose and make secure the elevator on which the plaintiff was working when he was injured. The statute, as will be observed, requires that an elevator, as well as a hoisting-shaft or well-hole, shall be enclosed and secured. It is not enough that the shaft and space in which several elevators are being operated is enclosed. So far as the language of the act discloses the legislative purpose, it is just as important that the elevator shall be safeguarded as the shaft or well-hole. Each is properly and substantially to be enclosed and secured in such a way as to give protection to the lives and limbs of those working on or about them.

Reference is made to the statutes of other states which provide only for enclosing and securing elevator-shafts, and it is argued that this indicates that legislation of this class is designed to safeguard the opening rather than the elevator or appliance operating in the shaft or opening. This comparison of statutes, however, disclosing the added provision in the Kansas act, indicates that the Kansas legislature intended to impose an additional duty upon the owner or operator of such establishments, and that duty was the enclosing and securing of elevators as well as shafts and well-holes. Indeed, it would seem that there is as much necessity for safeguarding an elevator as to provide protection for a shaft or well-hole. A railing or guard which might be sufficient protection for a hoisting-shaft or well-hole might be wholly inappropriate for an elevator and inadequate to protect those working upon it.

This case illustrates the necessity for greater protection than is afforded by an enclosure of a shaft wherein two elevators are being operated. It appears

that there is almost as much danger of articles loaded on one elevator falling down the shaft upon those working on the other elevator at a lower level as there is of articles falling through an open door of the shaft from an upper floor. Even if the north door had been closed there was danger that a misdirected barrel, put in through the south door, would pass over and off of the south elevator into the shaft where the north elevator was being operated and cause just such an injury to an employee as was suffered by plaintiff. The shaft was considerably larger than the two elevators operating in it. It was about eleven feet long by nine and one-half feet wide, while each elevator was about seven feet long by four feet wide. At the west end of each elevator there was a space between it and the wall of the shaft of about two and one-half feet, and at the east end a space of about eighteen inches. Between the sides of the elevators and the outside walls of the shaft there was a space of about six inches. A common guide-post about a foot wide was placed in the middle, between the two elevators. On the outside of each elevator there was placed a guide-post, and these three posts were grooved so as to control the elevators in going up and down the shaft. Over each elevator, and about six feet above its floor, was a cross-beam. From the ends of this beam iron rods extended to the corners of the platform on each elevator. There was a wheel on the top of each beam which was used in raising and lowering the elevators, and this brief description includes about all there was of the elevators in question. There were no screens, or guards, around them, no partition between them, and no hoods, or coverings, over them. It is easy to understand that an enclosure of the shaft was no protection against articles falling from upper floors or from one elevator upon employees working below on the other. A single elevator operating within an enclosed shaft might be made secure for most purposes, but two uncovered freight-elevators, working in a shaft such as has been

described, are not enclosed or secured within the meaning of the statute. Articles had previously fallen into the shaft, and the peril from that source to those working below upon the elevators was imminent and obvious. It appears to be practicable to enclose the elevators and to put hoods, or covers, over them. If the elevators had been safeguarded the injury to plaintiff would have been averted, and it was to avoid such accidental injuries to employees that the duty to enclose or secure elevators was imposed upon employers. The failure of the company to perform the duty expressly required by statute is *prima facie* negligence. Assumption of the risk was not available as a defense, and when plaintiff proved that he was injured in consequence of such neglect he made a case which warranted the jury in finding for him. (*Madison v. Clippinger,* 74 Kan. 700, 88 Pac. 260; *Manufacturing Co. v. Bloom,* 76 Kan. 127, 90 Pac. 821, 11 L. R. A., n. s., 225.)

It is argued that the court erred in instructing the jury that the company was required to enclose *and* secure the elevators, whereas the statute only requires them to be enclosed *or* secured. In the first instruction the court employed the phrase four times, and in one instance used the word "and" instead of "or," but at the close of the instruction, when the court came to state the conditions upon which the plaintiff might recover, the language of the statute was employed. It was evidently an unintentional inaccuracy, and when it is read in connection with the whole instruction it is clear enough that it could not have misled the jury. Mere verbal criticisms of this character find little favor in reviewing courts. In a later instruction the court again used the same form of expression, but we are satisfied that the use of the word "and" instead of "or" in any part of the charge did not result in prejudice to the defendant. In effect it did not enlarge the duty of the company toward its employees. The real purpose of the statute is to protect the lives and limbs of

employees in manufacturing establishments. It imposes on owners and operators the duty of causing elevators, hoisting-shafts and well-holes "to be properly and substantially enclosed or secured, in order to protect the lives and limbs of those employed in such establishments." (Laws 1903, ch. 356, § 1.) Plaintiff contends that "and" and "or," as used in this provision, are convertible terms, and that the phrase means no more than if it had read "shall cause the same to be properly and substantially enclosed—that is to say, secured in order to protect the lives and limbs." It is very clear, however, that the enclosure mentioned must be one to effectuate the humane purpose of the statute —that is, to secure the lives and limbs of employees. It would seem that force might and should be given to both words. To enclose an elevator might not always make it secure, and hence other precautions might be necessary to accomplish the legislative purpose. In any event the enclosure specified must be one that will secure, and if it does not it is not up to the statutory requirement. A shaft might be sufficiently safeguarded by a railing or fence around it three or four feet high, depending upon its location and the use to which it was put. Some might need no more than a guard to keep persons from falling into them, while others might need a complete enclosure to protect those below from falling articles. A railing around some well-holes might suffice, but for others in a different location a trap-door might be required. In the case of the elevators under consideration an enclosure was manifestly necessary to the safety of employees, and an enclosure, too, that would secure such safety. It follows, therefore, that as to them the expression "to enclose *and* secure" exacted no higher duty than if the court had used the statutory language: "enclose or secure."

No material error was committed in the instructions given or refused, nor is there anything substantial in the objection made to a ruling on the admission of

testimony.    Although the award seems to be liberal, we cannot say from the testimony that it indicates passion or prejudice on the part of the jury.

The judgment of the district court is affirmed.