No. 18,547.

FRANK N. IRELAND et al., Partners, etc., *Appellants*, v.
E. SHORE, *Appellee*.

SYLLABUS BY THE COURT.

1. NEGOTIABLE INSTRUMENTS — *"Defective Title"* — *"Holder in Due Course"*—*Burden of Proof*. The plaintiffs, as indorsees of the payees, sued the defendant as the maker of certain promissory notes. The defenses were breach of contract on the part of the payees, failure of consideration, that the plaintiffs were not innocent purchasers, and defective title in the payees on account of fraud in obtaining the instruments. *Held*, instructions to the jury that the possession of a negotiable instrument properly indorsed is *prima facie* evidence that the holder is a holder in due course and that when the title of a person negotiating such an instrument is shown to be defective the burden is on the holder to prove that he is a holder in due course (Negotiable Instruments Law, § 66), were necessary and proper and were not inconsistent with each other.

2. SAME. When proof of defective title in a person negotiating an instrument (Negotiable Instruments Law, § 62) has been made and the burden is thereby cast upon the holder to show that he is a holder in due course (Negotiable Instruments Law, § 59), production of the instrument properly indorsed can prove no more than that the instrument is complete and regular on its face. Other elements of the definition of a holder in due course must be proved by evidence *aliunde*.

3. EVIDENCE—*Sufficient to Sustain Findings of Jury*. The evidence examined and held sufficient to sustain a special finding of the jury that the plaintiffs did not purchase the notes sued on.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed January 10, 1914. Affirmed.

*R. M. Barnes*, of Lacon, Ill., *J. H. Magoon*, and *Seward I. Field*, both of Medicine Lodge, for the appellants.

*A. L. Noble*, and *J. N. Tincher*, both of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs, Frank N. Ireland and Charles H. Ireland, are partners dealing in commercial paper under the firm name of Frank N. Ireland & Son. They reside at Washburn, Illinois. Robert Burgess and Charles H. Burgess are partners dealing in horses under the firm name of Robert Burgess & Son. They reside at Wenona, Ill. The defendant, E. Shore, resides at Coats, Kan. On February 20, 1907, the defendant purchased of Robert Burgess & Son a stallion which they were exhibiting at a horse show held at Wichita. In payment of the price the defendant executed and delivered to the vendors two promissory notes, each for the sum of $800 with interest at the rate of 8 per cent per annum, one due September 20, 1908, and the other due September 20, 1909. On September 3, 1910, the plaintiffs sued the defendant on these notes.

The petition was in the usual form. The answer put in issue the written indorsement on the back of the notes, which reads as follows:

"For value received, I hereby guarantee payment of the within note and waive demand and notice of protest on same when due.     ROBT. BURGESS & SON."

The answer further pleaded that the notes were procured through false and fraudulent representations concerning the stallion, which died soon after the sale, that the plaintiffs were aware of the fraud, and that they were suing on the notes pretending to be innocent purchasers in order to aid the scheme of Robert Burgess & Son to defraud the defendant. Other defenses were, breach of the terms of the contract of sale and want of consideration for the notes. The reply was a general denial.

The evidence on the part of the plaintiffs was that Frank N. Ireland, representing his firm, purchased the

notes of Charles H. Burgess, representing his firm, on April 30, 1908, that the consideration paid was the face of the notes with interest to April 30, 1908, less 2 per cent, that the notes were duly indorsed and delivered at the time of the purchase, that all this was done in the usual course of business, that the plaintiffs had ever since owned the notes, and that Robert Burgess & Son had no interest in them.

The evidence on the part of the defendant established the fraud by which the payee obtained the notes. Besides this, facts were shown tending to impeach the plaintiffs' claim that they were purchasers in good faith. This proof was aided by the cross-examination of the plaintiffs' witnesses, and neither of the plaintiffs testified in rebuttal that when they purchased they had no notice of the defect in the title of Robert Burgess & Son.

The court instructed the jury as follows:

"7. Every holder of negotiable paper is deemed *prima facie* to be a holder in the due course of business; but when it is shown that the title of the person who has negotiated the instrument was defective, the burden is upon the holder to prove that he is the holder in due course of business.

"8. The notes in question are what is known in law as negotiable instruments, and in this connection I say to you that the possession of a negotiable instrument, payable to order and properly indorsed is *prima facie* evidence that the holder is the owner thereof, that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstance which would impeach its validity, and that he is entitled to recover upon it, and this *prima facie* case is not overthrown by matters which at best do no more than create a suspicion; and in an action of this kind upon negotiable promissory notes claimed to have been transferred by the payee before maturity without notice of any defence thereto, the burden of proof is upon the defendant maker of the notes where he admits their execution to prove that they were not so transferred.

"8½. The title of a person who negotiates an instrument is defective within the meaning of the law when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an alleged consideration, or when he negotiates it in breach of faith; or under such circumstances as amounts to a fraud."

The jury found specially that the plaintiffs did not purchase the notes, and returned a general verdict for the defendant. The plaintiffs appeal.

The instructions are criticized as inconsistent and incorrect. The argument seems to be that the instruction placing the burden on the holders to show that they were holders in due course, after proof of defective title in Robert Burgess & Son had been made, is not consistent with the instruction that the possession of a negotiable instrument, properly indorsed, is *prima facie* proof that the indorsee is a holder in due course, because if by producing the paper properly indorsed the holder makes a *prima facie* case that he is a holder in due course, no further burden rests on him, but the burden of showing the contrary rests on the makers. The fault in this argument lies in the assumption that the holder may rest on the *prima facie* case made by producing the paper when defective title in the negotiator is proved the same as he may do when a defense is made lacking the element of fraud, duress, illegality, or breach of faith.

Suppose the defense to a note be simple breach of warranty. By producing the note properly indorsed, the indorsee establishes *prima facie* that he is a holder in due course, that is, among other things, that he took the note without notice of any infirmity. This *prima facie* case is not affected by proof of the breach of warranty. The burden rests on the maker to go further and show notice of infirmity. The rule is other-

wise when the defense is defective title, which is defined by the negotiable instruments law as follows:

"§ 62. The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." (Gen. Stat. 1909, § 5308.)

While every holder is given the benefit of the presumption that he is a holder in due course, when a defective title is shown against him he must assume the burden of proving as a fact that he is a holder in due course.

"§ 66. Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to acquisition of such defective title." (Gen. Stat. 1909, § 5312.)

The term holder in due course is defined by the negotiable instruments law as follows:

"§ 59. A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Gen. Stat. 1909, § 5305.)

When defective title is the defense the first element of this definition alone can be proved by producing the instrument. The others must be established by proof *aliunde*.

Instruction No. 8 was properly given for the benefit of the plaintiffs should the jury conclude that Robert Burgess & Son were not guilty of fraud but had broken the contract of sale. Instructions 7 and 8½ were properly given for the benefit of the defendant should the jury conclude that the title of Robert Burgess & Son was vitiated by fraud. Probably the general rule should have been stated first and then the rules relating to the particular defense of defective title.

It is said that the portion of the 8th instruction, relating to the evidence necessary to overthrow the *prima facie* case for the holder made by producing the instrument properly indorsed, is erroneous because it did not embrace the substance of section 63 of the negotiable instruments law, which reads as follows:

"§ 63. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Gen. Stat. 1909, § 5309.)

The instruction merely undertook to deal generally with all the matters included in the definition of a holder in due course. It was unimpeachable as far as it extended and consequently is not open to the exception taken to it. A further instruction calling attention to the particular subject of what it takes to constitute notice of defective title doubtless would have been given had the plaintiffs so desired and so requested. The matter is of no importance, however, since the jury found that the plaintiffs did not purchase the notes at all.

The plaintiffs urge that the special finding of the jury just referred to is not supported by the evidence.

In the spring of 1907, almost a year before the notes were indorsed to the plaintiffs, the defendant notified

Robert Burgess & Son of the death of the horse and demanded that the notes be returned to him. When the notes were indorsed to the plaintiffs interest on them was due and unpaid, and Frank N. Ireland observed the fact. Frank N. Ireland testified by deposition that he had an agreement in the form of a letter outlining the way in which the plaintiffs were to handle the paper of Robert Burgess & Son. When the deposition was taken this agreement was in the Washburn bank, an institution run by Charles H. Ireland and others, and only a block away from the office where the deposition was taken. When asked to produce the agreement the witness refused to do so on the advice of counsel. The legitimate inference was that if produced it would be detrimental to the plaintiffs' case and of benefit to the defendant. (*Belknap v. Sleeth*, 77 Kan. 164, 93 Pac. 580.) The taking of depositions on behalf of the plaintiffs was not arranged for by the plaintiffs but by Robert Burgess & Son. A few days before the time arrived Charles H. Burgess called Frank N. Ireland by telephone and asked him to be sure to be in Washburn, as they wanted to take his deposition in the case of *Ireland v. Shore*. The attorneys for the plaintiffs were not employed by the plaintiffs but by Robert Burgess & Son. These attorneys came to Washburn on the day the depositions were taken, in company with Charles H. Burgess, and in his automobile. The defendant undertook to take the deposition of a witness named Douglas at the time and place fixed by the plaintiffs for taking their depositions. Douglas had audited the books of Robert Burgess & Son, and had made a report to them concerning the condition of their notes. He produced the bills receivable book of that firm, containing a record of the defendant's notes, and while under examination concerning the book Charles H. Burgess seized it, gave vent to some profanity, carried the book from the room, and kept it away for half an hour. When the book was

brought back Douglas read the entries relating to the defendant's notes, but the defendant's attorney was not allowed to see the entries. The record is entirely barren of any testimony on the part of the plaintiffs that when they purchased the notes they had no notice of the fraud practiced on the defendant. Testimony of this character was indispensable to sustain the burden cast upon the plaintiffs by section 66 of the negotiable instruments law, and failure to supply it warranted an inference unfavorable to the plaintiffs. (*Fowler v. Enzenperger*, 77 Kan. 406, 410, 94 Pac. 995.) The conclusion drawn by the jury from all the facts and circumstances, that the plaintiffs were not owners but were merely assisting Robert Burgess & Son to realize on the paper, was not unreasonable.

Certain testimony induced by cross-examination of one of the defendant's witnesses is not regarded as of sufficient moment to overturn the verdict, even if erroneously admitted, and the refusal of the court to require the jury to answer certain special questions propounded to them is not important in view of the special finding that the plaintiffs did not purchase the notes.

The judgment of the district court is affirmed.