No. 21,918.

HOWARD J. HODGSON, *Appellee*, v. THE JOHN DEERE PLOW COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. SALE—*Price of Engine—Evidence—Finding.* The evidence held to warrant a finding that the regular price of an engine and equipment was $180 less than had been charged for it.

2. SAME—*Refusal to Produce Evidence—Inferences.* An instruction to the effect that the refusal of a party to produce material evidence within his control warrants an inference that it is unfavorable to him, held to be correct as a general proposition of law and to have been applicable in the present case.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed February 8, 1919. Affirmed.

*Robert H. Clogston*, of Eureka, *R. M. Hamer*, and *H. E. Ganse*, both of Emporia, for the appellant.

*Howard J. Hodgson*, of Eureka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Howard J. Hodgson bought of the John Deere Plow Company a Stover oil portable engine under an agreement that he was to pay for it at the wholesale or dealer's

price, he paying the local agents, Ross Brothers, $100 for their services. The company charged him $1,015, which he paid. After making payment he received information which led him to believe that the dealer's price was in fact not that much. He brought an action for the difference, which he alleged to be $200. He recovered a judgment for $180, and the defendant appeals.

1. The defendant asserts that there was no evidence to support a finding that the dealer's price was less than $1,015, and especially none to show a difference of $180. Several statements in which this item was included were made by the defendant to the agents through whom the transaction was in part conducted. In one the price of the engine, including mounting and a pulley, was put up at $985, while another engine of the same kind, with the same equipment, was priced at $944.80. In another the price was stated at $1,085, made up of $935 for the engine, $125 for the mounting (or truck), and $25 for the pulley. In another the total amount was given at $985. In another the total was $1,015, but the items. were thus distributed: engine, $835; mounting, $150; pulley, $30. These figures, if the mounting and pulley are included, show the lowest price named to have been $944.80, or $70.20 less than that charged. There was, however, other evidence of a variance between the regular price and the amount collected, and as to its approximate amount. The plaintiff himself gave testimony to this effect:

Having received information that he had been charged an excessive price, he went to the company's place of business in Kansas City to make inquiries. He was referred to a representative of the company, to whom he stated that under a contract to pay the dealer's price for the engine referred to he had been required to pay $1,015, and that he had since been told that the actual price was about $800. An answer was made which, among other things, included statements "that Ross Brothers had gotten this money"; that if he had paid $1,015, and that was not the dealer's price, he should go to Ross Brothers and recover it from them. In the conversation the plaintiff repeated several times that he knew the price was about $800, and each time the answer was in substance that he should collect it of Ross Brothers—that they were the men that got his money. The plaintiff finally said that

his deal had been made directly with the company; that its books would tell just what the engine was selling for at the time of his purchase, and if the company's representative would show them to him, and it turned out that he was mistaken, he would not want a dollar, and would go home perfectly satisfied. He asked the representative of the company if he would do this, and the answer was "No, I won't." The representative added that there would not be opportunity to do so before closing time, but promised at the plaintiff's request to look the matter up and write him in detail about it. The defendant's representative referred to testified that he did not write to the plaintiff—that he "just neglected to do so." He gave a version of the conversation that differed from that of the plaintiff, but of course all conflicts of evidence must be regarded as settled in such a way as to support the verdict. A witness for the defendant, who described himself as its price controller, stated that the wholesale price of the engine and equipment furnished to the plaintiff was $1,110.20; that the engine was $935, the mountings $125 and an extra pulley $25. These figures do not appear to agree with themselves, but the separate items are the same as those of the second statement already referred to.

It is difficult to find an exact basis for the assessment of the recovery at precisely $180, but we regard this evidence as sufficient to warrant a finding that the dealer's price was less than $1,015. Treating that fact as established, the refusal of the company's representative to show the books or give an exact statement, together with his failure to deny that the charge was about $200 more than it should have been, and his insistence that Ross Brothers had got the money and that the plaintiff should look to them, warranted an inference that the excess was somewhere near the amount named. The sum arrived at by the jury does not indicate the application of any erroneous theory or the existence of passion and prejudice, and we do not think it can be said that the evidence was not sufficient to support it.

2. Complaint is made of the giving of an instruction reading:

"You are instructed that, in litigation between two parties where one party controls certain evidence, and is asked to produce that evidence by the other party, and there is a refusal on the part of the other

party to produce it, the presumption is that the evidence so requested to be produced is unfavorable to the party in whose possession the evidence is."

It is a familiar rule that the omission of a party to produce material evidence which is within his control warrants an inference that it is unfavorable to him. (*Ireland v. Shore,* 91 Kan. 326, 137 Pac. 926; 1 Jones on Evidence, Horwitz ed., § 19; 10 R. C. L. 889; 1 Wigmore on Evidence, §§ 285, 291.) Where there is a refusal to produce the evidence after a demand, the grounds of such inference are the stronger. In some situations the latter phase of the matter may be affected by the statutory provisions governing the consequences of a refusal to produce or grant inspection of documents after a demand has been made according to a prescribed method, although the contrary has been held. (*Lockwood v. Rose et al.,* 125 Ind. 588.) In the present case we do not regard the statute as preventing the application of the general rule. From the evidence of the conversation between the plaintiff and the defendant's representative the jury were warranted in inferring the existence of an entry in the defendant's books showing the wholesale price of the engine, which it had refused to exhibit to the plaintiff upon his request, and had not produced at the trial, and this was a sufficient basis for the giving of the instruction, especially in view of the variation in the figures given, and the uncandid attitude ascribed to the defendant by the plaintiff's testimony.

The defendant relies upon an Illinois case as condemning such an instruction as that quoted. (*Cartier v. Troy Lumber Co.,* 138 Ill. 533.) There the defendant had admitted that the entries which were not produced at the trial were exactly as they were claimed to be by the plaintiff. In that situation the admission supplied the place of the production of the books, and there was no occasion for any unfavorable inference.

The judgment is affirmed.