No. 25,726.

WILLIAM BARBER and W. W. MARTIN, *Appellants*, v. THE MISSOURI
PACIFIC RAILROAD COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. CARRIERS—*Wheat Lost in Shipment—Transportation to Adjacent Foreign
Country*. For a person to recover under section 8604a of the U. S. Com-
piled Statutes of 1918, 1923 Supplement, for wheat lost in shipment for
export, he must show that the shipment was intended to be transported to
an adjacent foreign country.

2. APPEAL AND ERROR—*Amount in Controversy—Requisite Amount or Value*.
Where a plaintiff sues to recover an amount in excess of $100, is defeated,
appeals to the supreme court, fails in his efforts to secure a reversal of the
entire judgment, and then, by a change in the basis on which he hopes to
recover, in effect abandons his cause of action as tried in the district court
and adopts a new one by which he attempts to recover less than $100, this
court cannot consider the substituted action, because its jurisdiction in
actions for the recovery of money is limited by section 60-3303 of the
Revised Statutes to those actions in which $100 or more is involved.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed
May 9, 1925. Affirmed.

*E. C. Wilcox, Myrtle Youngberg*, and *J. Howard Wilcox*, all of Anthony,
for the appellants.

*W. P. Waggener, O. P. May*, both of Atchison, and *Vernon Day*, of An-
thony, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.:   The plaintiffs appeal from a judgment rendered
in favor of the defendant in an action commenced by them to re-
cover the loss caused by leakage in a car of wheat shipped by the
plaintiffs. Judgment was rendered on the demurrer of the defend-
ant to the evidence of the plaintiffs.

The plaintiffs sold two cars of wheat to the Strong Trading Com-
pany at Wichita, Kan. Under the contract of sale the wheat was
to be shipped from Shook, Kan., was to be billed to. Galveston,
Tex., for export, and was to be stopped at Wichita for inspection.
Nothing was said about the country to which the wheat was to be
exported. On July 7, 1921, the plaintiffs shipped one of the cars
of wheat from Shook to their order at Wichita, with instructions in
the bill of lading to notify the Strong Trading Company. The bill
of lading contained the following:

"Sec. 1. The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided. . . .

"Sec. 2. In issuing this bill of lading this company agrees to transport only over its own line, and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line. No carrier shall be liable for loss, damage or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

After the car was loaded the plaintiffs drew a draft on the Strong Trading Company in favor of the Citizens National Bank of Anthony for $1,100, the price of the wheat, attached the draft to the bill of lading, turned the draft over to the Citizens National Bank of Anthony, and were given credit on the books of the bank for $1,100. When the car reached Wichita the Strong Trading Company was notified. It took up the bill of lading, surrendered it to the defendant, and rebilled the car to the order of the Strong Trading Company at Galveston, Tex., with directions to notify the company at that place. That bill of lading had on it a notation that the wheat was intended for export. The Strong Trading Company sold the wheat to the Wichita Grain Company, who in turn sold it to Wallingford Brothers, to whom the wheat was finally delivered at Galveston. When the wheat was there weighed, it was found that 118 bushels and 50 pounds had leaked out of the car. The plaintiffs were compelled to refund the difference between the price they had received for 1,100 bushels of wheat and the amount that had been delivered at Galveston, the difference being $118.83.

1. The plaintiffs seek to recover under a statute which reads:

"Any common carrier, railroad or transportation company subject to the provisions of this act, receiving property for transportation from a point in one state . . . to a point in another state . . . or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier . . . to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier . . . from the liability hereby imposed; and any such common carrier . . . so receiving property for transportation from a point in one state . . . to a point in another

state . . . or from any point in the United States to a point in an adjacent foreign country . . . shall be liable to the lawful holder of said receipt or bill of lading, or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage or injury to such property caused by it or by any such common carrier, . . . to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading. . . ." (U. S. Comp. Stat. [Compact Ed.], 1923 Supp., § 8604a.)

Was the shipment one to an adjacent foreign country or to a nonadjacent foreign country? The contract stipulated that the wheat was for export, but did not say anything about whether the shipment was to an adjacent foreign country or to a nonadjacent foreign country. There is nothing in the record to show what country would be the final destination of the shipment. The federal statute does not cover all shipments to foreign countries; it covers only shipments to adjacent foreign countries. Shipments to nonadjacent foreign countries are left to the operation of the common law. At common law the defendant had the right to stipulate that its liability attached only to shipments over its lines. The bill of lading stipulated that the defendant should not be liable for loss not occurring on its own road, nor after the shipment had been delivered to the next carrier. It was incumbent on the plaintiffs to bring themselves within the operation of the statute. (6 Standard Proc., 679; *Fowler v. Enzenperger,* 77 Kan. 406, 94 Pac. 995.) They did not do so, and for that reason they cannot recover under it.

There is another matter that should be noticed. The federal statute provides for liability "on a through bill of lading." In this case there was no "through bill of lading" from Shook. The car was billed first from Shook to Wichita, second from Wichita to Galveston. There was no bill of lading to any foreign country. That precludes the plaintiffs from recovery under the statute for a shipment to an adjacent foreign country.

2. The plaintiffs contend that even if they cannot recover under the federal act regulating interstate and foreign commerce, they should recover under section 66-304 of the Revised Statutes, the loss which occurred from Shook to Wichita. That statute in part reads:

· "That any common carrier receiving property for the transportation from one point in this state to another point in this state shall issue a receipt or bill of lading therefor, and such carrier or any other common carrier to which said property may be delivered or over whose line or lines such property may pass shall be liable to the owner of such property for any loss, damage or in-

jury caused by any one or more of said carriers, and no contract, rule or regulation shall exempt any of such common carriers from the liability hereby imposed."

The plaintiffs did not sue to recover under this statute. The bill of particulars (the action was commenced before a justice of the peace) was drawn to recover under the federal act governing transportation in interstate and foreign commerce and was not drawn to recover under section 66-304 of the Revised Statutes of this state. The action was tried by the plaintiffs to recover under the federal statute. There is nothing in the record to indicate that the plaintiffs in any way suggested to the court that they might recover under the statutes of this state.

There was evidence which tended to prove that the plaintiffs put 70,110 pounds of wheat in the car at Shook. The bill of lading states that there were 66,000 pounds of wheat in the car. A record made in the office of the Strong Trading Company at Wichita showed that the bill of lading weight was 66,000 pounds, and that the railroad weight at Wichita was 67,100 pounds, 1,100 pounds more wheat in the car than was indicated by the bill of lading, but 4,110 pounds (68½ bushels) less than what the evidence of the plaintiffs tended to show they put in the car. The contract price was one dollar a bushel. Why should the plaintiffs not recover for the loss of wheat in transportation from Shook to Wichita?

If the plaintiffs had sued to recover for the loss from Shook to Wichita, their claim would have been $68.50. On a judgment against them on a claim for that amount, they could not have appealed to this court. (R. S. 60-3303.) If the appeal of the plaintiffs is now sustained, it must be on the theory that the evidence to show the loss from Shook to Wichita should have been submitted to the triers of fact. That, if it had been submitted, would have been a claim for $68.50. When the plaintiffs ask to recover the loss from Shook to Wichita, they in effect abandon their claim for loss from Shook to Galveston and substitute a new action therefor in which the amount in controversy is less than $100.

The judgment is affirmed.

HARVEY, J. (dissenting): In my judgment an incorrect interpretation is placed upon the statute (U. S. Comp. Stat. [Compact Ed.], 1923 Supp., § 8604a) quoted in the opinion. It will be noted that the terms "interstate commerce" and "foreign commerce" are not used in the statute. The statute makes the liability of the initial

Barber v. Missouri Pac. Rld. Co.

carrier to depend upon the contract of carriage, as shown by the bill of lading, without regard to whether the commerce be interstate or foreign. If the contract of carriage is from a point in one state, territory, etc., to a point in another state, territory, etc., or to a point in an adjacent foreign country, the initial carrier must issue a bill of lading therefor, embodying the contract of carriage undertaken. The statute then fixes the liability of the initial carrier under such contract of carriage. The statute does not make the liability of the carrier depend upon what use or disposition the owner of the goods intends to make of them after they reach the destination named in the bill of lading. The liability of the carrier depends solely upon whether the shipment undertaken by the contract of carriage is from a point in one state to a point in some other state, or to a point in some adjacent foreign country, on a through bill of lading. If the contract of carriage were made from a point in one state to any named point in a nonadjacent foreign country, and the bill of lading issued for such carriage, this statute would not apply. But we have no such situation here. The contract of carriage in this case was from a point in Kansas to Galveston, Tex., and under such contract of carriage the statute quoted in the opinion fixes the liability of the initial carrier.

There may be other reasons why the plaintiff in this case cannot recover. It is argued that the defendant undertook the carriage only from Shook, Kan., to Wichita, Kan., and further argued that the plaintiff is not the real party in interest. In view of the conclusion reached in the majority opinion, I have not undertaken to analyze these questions, and express no opinion upon them.